HARTLINE, DACUS, BARGER,
  DREYER & KERN, L.L.P.
Scott G. Edwards - *Admitted Pro Hac Vice*
6688 North Central Expressway, Suite 1000
Dallas, Texas 75206
Telephone:  (214) 369-2100
E-mail:  sedwards@hdbdk.com

FENNEMORE CRAIG, P.C.
William L. Thorpe (No. 005641)
Scott Day Freeman (No. 019784)
3003 North Central Avenue, Suite 2600
Phoenix, Arizona  85012-2913
Telephone:  (602) 916-5000
E-mail:  wthorpe@fclaw.com
E-mail:  sfreeman@fclaw.com

Attorneys for Defendant Bridgestone
Firestone North American Tire, LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Angel Juarez Moreno, individually and as surviving spouse, and on behalf of all statutory beneficiaries of Antonia de Santiago Castillo, deceased; J. A. J. de Santiago, A. J. de Santiago, and A. J. de Santiago, minors, by and through their father and next friend, Angel Juarez Moreno; Beatriz Moreno de Santiago and Joaquin de Santiago-Castillo, husband and wife, individually and as next friends on behalf of their minor children, J. de Santiago, B. de Santiago, J. C. de Santiago, J. A. de Santiago-Castillo; | Case No.: CIV 07-889-PHX-NVW |
| Plaintiffs, | **DEFENDANT BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF TROY COTTLES AND BRIEF IN SUPPORT THEREOF** |
| v. | |
| Bridgestone/Firestone, Inc., an Ohio Corporation; Bridgestone/Firestone North American Tire, L.L.C., a Delaware limited liability company; Bridgestone Americas Holding, Inc., a Nevada corporation; Bridgestone Corporation, a Japanese corporation; Black and White Corporations I-X; Black and White Partnerships I-X; John Does 1-10, | |
| Defendants. | |

Bridgestone Firestone North American Tire, LLC ("Firestone") moves the Court for an order excluding the following three expert opinions of Troy Cottles: (1) the subject tire is defective in design due to the presence of rubber reversion zones; (2) the subject tire is defective in design because its skim compound had inadequate antidegradants (antioxidants); and (3) the subject tire is defective in manufacture due to the presence of liner pattern marks. It is respectfully submitted that this motion should be granted for the reasons set forth below.

## I.

## Background

This is a products liability action arising out of a motor vehicle accident which occurred June 16, 2004 in Chihuahua, Mexico. Plaintiffs allege the left rear Firestone Steeltex Radial A/T LT265/75R16 Load Range E light truck tire ("subject tire") on their 2000 Ford Excursion experienced a tread/belt separation and detachment, causing Angel Juarez Moreno to lose control of the vehicle. Plaintiffs have designated Troy Cottles as an "expert witness" to be called at the trial of this matter for the purpose of offering the opinion that the subject tire was defective in design and manufacture for several alleged reasons.

Among other things, Cottles admits: (1) he conducted no testing to support his opinions, (2) he has no scientific studies to support his opinions, (3) his opinions were not subjected to peer review, and (4) his opinions have not been accepted by the relevant scientific community. Moreover, Cottles has very little non-litigation experience in tire failure analysis of tires that have sustained a tread/belt separation and detachment. His defect opinions set forth herein should accordingly be excluded.

Firestone is not seeking to exclude Mr. Cottles entirely. Nor does it seek to exclude each of his proffered opinions. Instead, Firestone has selected only three of his weakest opinions, which plainly do not meet the requirements of Rule 702.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## II.

## ARGUMENTS AND AUTHORITY

**A.    Cottles Admits a Tire can Fail for Reasons other than a Defect**

Cottles does not believe a tire is defective merely because it sustains a tread/belt separation.[1]  He agrees a failed tire does not necessarily mean a bad or defective tire.[2]  Properly designed and manufactured tires can fail for reasons unrelated to a defect in the tire.  *Id.*  Moreover, Cottles agrees all steel-belted radial tires can fail; there is no such thing as an indestructible steel-belted radial tire.  *Id.*

However, Cottles has never done any scientific studies to determine what service conditions can cause tread/belt separations and detachments.  *Id.* at 56-57.  He has never done any testing of steel-belted radial tires to determine what service conditions cause tread/belt separations and detachments in tires.  *Id.* at 57.  He has never done puncture testing of steel-belted radial tires where he ran the tires to failure.  *Id.* at 57, 98.

Cottles stated in his expert report in this case that what he calls the "major rubber reversion crescent zone" is from 45 to 105° on the opposite serial side of the tire.[3]  The subject tire has a patch-only repair of a puncture in the tire in the same area.  In his report, Cottles references the fact that there is a "patch repair" at 80° on the opposite serial side of the tire. *Id.* at 18.

**B.    The Opinions at Issue**

Cottles' tire opinions at issue are as follows:

1)    The subject tire is defective in design due to the presence of rubber reversion

---

[1]  *See* Deposition of Troy Cottles in *Johnson v. Bridgestone Firestone North American Tire, LLC*, relevant portions of which are attached hereto and incorporated herein for all purposes as Exhibit "1," p. 40-41.  Although certain pages of this deposition are designated confidential, none of the pages cited in this motion and brief were so designated.
[2]  *See* Deposition of Troy Cottles in *Werner v. Bridgestone Firestone North American Tire, LLC*, relevant portions of which are attached hereto and incorporated herein for all purposes as Exhibit "2," 129.  Although certain pages of this deposition are designated confidential, none of the pages cited in this motion and brief were so designated.
[3]  *See* Expert Report of Troy Cottles ("Cottles Report") previously filed herein [Doc. No. 109-3], p. 19.

zones;

2)      The subject tire is defective in design because its skim compound had inadequate antidegradants (antioxidants);

3)      The subject tire is defective in manufacture due to the presence of liner pattern marks.

Firestone moves this Court to exclude the above opinions of Cottles because his opinions are conclusory, unsubstantiated, and lack the requisite reliability to satisfy the requirements of Federal Rule of Evidence 702, as interpreted by the United States Supreme Court in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993) ("*Daubert I*"); *on remand*, *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995) ("*Daubert II*") and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Further, Cottles lacks non-litigation tire failure analysis experience related to tread/belt detachments of tires.  Further, he is not qualified to offer tire chemistry opinions related to antidegradants in tires as required by Federal Rule of Civil Procedure 702.

C.      **The *Daubert* Standard**

Rule 702 of the Federal Rules of Evidence, which governs the admission of expert testimony, provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

When faced with a proffer of expert testimony, the Court must determine whether the expert witness is qualified and has specialized knowledge that will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert I*, 509 U.S. at 591.

Even if a witness qualifies as an expert, the Court, under Federal Rule of Evidence 702, must exercise its gatekeeper function by inquiring into the reliability and foundation of a proffered opinion in determining the admissibility of any such opinion. Fed. R. Civ. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S. Ct. 2786, 2795 (1993), the United States Supreme Court held Rule 702 of the Federal Rules of Evidence requires scientific expert testimony to be reliable and relevant.

Plaintiffs must prove by a preponderance of the evidence that their expert's opinions are scientifically reliable, relevant and result from an application of the scientific method. *Daubert I* at 2795-2796. Based on *Daubert*, the district court is charged with certain responsibilities in its gatekeeper function. This requires that the court ensure that such testimony constitutes "good science" (509 U.S. at 593, 113 S. Ct. at 2797) and that findings are sufficiently "derived by the scientific method" or otherwise "supported by appropriate validation." *Daubert I*, 509 U.S. at 590, 113 S.Ct. at 2795; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). This requires findings by the district court under Rule 104(a), Fed. R. Evid., that the proffered evidence possesses a sufficient evidentiary reliability to be admissible as scientific, technical, or other specialized knowledge and that the proffered evidence is relevant in the sense that it will assist the trier of fact to understand the evidence or determine a fact at issue. *See* Standards and Procedures for Determining the Admissibility of Expert Testing After *Daubert*, 157 F.R.D. 571, 580 (1994).

Evidentiary reliability is demonstrated by a showing that the knowledge offered is more than speculative belief or unsupported speculation. *Daubert I* at 2795.

While certainty is not required, the knowledge asserted must be based on good scientific grounds. *Id.* Scientific knowledge requires more than guesswork, it must be grounded in a body of known facts or a body of ideas inferred from such facts; otherwise, reliability is lost and the trier of fact is not assisted by what may be no more than speculation or subjective belief.[4] Expert testimony must be based on scientific knowledge that "fits" related facts and not unrelated purposes in order to be helpful. *Daubert I* at 2795-2796.

In *Kumho Tire Co. v. Carmichael*, the Supreme Court abolished the distinction between scientific and technical evidence previously recognized by some courts and held that the opinions of an expert in a tire failure case merited Rule 702 scrutiny. 526 U.S. 137 (1999). In fact, the decision upheld the District Court's decision to exclude the opinions of a plaintiff's tire expert on *Daubert* grounds.

The opinions addressed in this motion plainly must pass the reliability and validity tests of Rule 702. The tire opinions at issue purport to address a cause and effect relationship between certain physical, chemical or mechanical conditions and the ultimate bonding or adhesion of the tire. Such relationships must depend upon scientific principles that can be tested and which, if true, can be peer reviewed and gain acceptance in a relevant scientific community.

Many courts have recognized that it is not so simply because "an expert says it is so." *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421 (5th Cir. 1987). When the expert "br[ings] to court little more than his credentials and a subjective opinion," this is not evidence that would support a judgment. *Viterbo*, 826 F.2d at 421-422. The Fifth Circuit in *Viterbo* affirmed a summary judgment and the exclusion of expert testimony that was unreliable, holding that "[i]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury." *Id.* at 422; *see also Rosen v. Ciba-Geigy Corp.*, 78 F.3d

---

[4] *United States v. Posado*, 57 F.3d 428, 433 (5th Cir. 1995); *Viterbo v. Dow Chemical Company*, 826 F.2d 420, 424 (5th Cir. 1987); *In Re Aircrash Disaster at New Orleans*, 795 F.2d 1230 (5th Cir. 1986); *Claar v. Burlington Northern R. Co.*, 29 F.3d 499 (9th Cir. 1994).

FENNEMORE CRAIG, P.C.

PHOENIX

316, 319 (7th Cir.)  ("[A]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."), cert. denied, 117 S. Ct. 73 (1996); *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992) (holding evidence legally insufficient in *Bendectin* case when no understandable scientific basis was stated).

The United States Supreme Court stated in *General Electric Co. v. Joiner*:

> [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*General Electric Co. v. Joiner*, 522 U.S. 136, 118 S. Ct. 512, 519 (1997).

A leading decision of the Seventh Circuit construing *Daubert* notes that its basic object is "to make sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work."  *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996), cert. denied, 519 U.S. 819, 117 S. Ct. 73 (1996).  As one District Court noted, "[e]xperts cannot float their conclusions on cushions of air; they must rest those conclusions upon foundations built from reliable scientific explanation."  *Navarro v. Fuji Heavy Industries, Ltd.*, 925 F. Supp. 1323, 1328 (N.D. Ill. 1996), *aff'd*, 117 F.3d 1027 (7th Cir.), cert. denied, 1185 S. Ct. 600 (1997).  The essential failing of the opinions at issue here is that they show no adherence to such standards.  They are based on no scientific analysis, no independent testing, and no independent body of accepted scientific information.

## D.     *Daubert* and the Tire Expert

Because so many factors other than defect can cause a tire to fail, courts require a valid expert opinion in order to make a prima facie case of defect and unreasonable

danger.[5]   Courts have not hesitated to exclude expert testimony concerning alleged tire defects under *Daubert* where the expert testimony is not reliable.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999); *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224 (5th Cir. 2007); *McCool v. Bridgestone/Firestone North American Tire, LLC,* 222 Fed.Appx. 847, 2007 WL 761 804 (11th Cir.(Fla.) 2007); *Allen v. LTV Steel Co.,* No. 02-4094, 2003 WL 21461633 (7th Cir. June 17, 2003); *Williams v. Michelin North America, Inc.* 381 F. Supp. 2d 1351 (M.D.Fla. 2005); *Hauck v. Michelin N. Am., Inc.,* 343 F. Supp. 2d 976 (D. Colo. 2004); *Rivera-Pomales v. Bridgestone/Firestone, Inc.,* 217 F.R.D. 290 (D.P.R. 2003); *Prince v. Michelin N. Am., Inc.,* 248 F. Supp. 2d 900 (W.D. Mo. 2003); *Diviero v. Uniroyal Goodrich Tire Co.,* 919 F. Supp. 1355 (D. Ariz. 1996), *aff'd,* 114 F.3d 851 (9th Cir. 1997); *Meyerhoff v. Michelin Tire Corp.*, 852 F.Supp. 933 (D.Kans. 1994), *aff'd,* 70 F.3d 1175 (10th Cir. 1995); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797 (Tex. 2006); *The Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107 (Tex.App.—San Antonio 2004, pet. denied); *Mitchell v. Uniroyal Goodrich Tire Company, Inc.*, 666 So.2d 727 (La.App. 1995); *Clement v. Griffin*, 634 So.2d 412 (La.App. 1994).

**E.     Plaintiffs' Tire Expert Troy Cottles**

The background of Plaintiff's "tire expert" is relevant to an evaluation of the context in which the specific opinions at issue were formed.  The facts show that the opinions are not the result of scientific inquiry, but were instead spawned as little more than unvarnished advocacy in Cottles' litigation consulting practice with no analysis of what actually occurred in the subject accident.  These opinions were merely developed in the context of litigation.

---

[5] *Shramek v. General Motors Corp.*, 216 N.E.2d 244 (Ill.App. 1966); *Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc.*, 395 So.2d 991 (Ala. 1981); *Woelfel v. Murphy Ford Co.*, 487 A.2d 23 (Pa.Super. 1985).

**Cottles does not have an engineering degree.**[6]  Although he received a bachelor's degree in mathematics from Athens State University, such university did not even have an engineering program when he attended there, and still does not have an engineering program.  *Id*. at 90-91.  **Cottles admits he is not a licensed professional engineer in any state.**  *Id*. at 91.

Cottles has never published any articles, papers or books pertaining to tires.  Exhibit 2, p. 25.  He does not hold any patents related to tires.  *Id*.  He is not a member of any tire association anywhere in the world.  *Id*. at 66.

1.     **Cottles Has Virtually no Non-Litigation Experience Involving Tire Failure Analysis of Tread/Belt Detachments**

**Cottles admits he did not hold himself out as a tire failure analyst until after he left Goodyear-Dunlop.**  Exhibit 1, p. 98.  While he was at Goodyear-Dunlop, **Cottles only remembers two occasions where he inspected tires which sustained tread/belt separations that were returned from the field**.  Exhibit 3, p. 102-103.  Cottles never worked in the product analysis group at Goodyear-Dunlop.  *Id*. at 100.  Based on his limited experience in examining tires that have sustained a tread/belt detachment, he has **never** inspected a tire that sustained a tread/belt separation and detachment as a result of overdeflection (underinflation and/or overloading).  Exhibit 2, p. 127-128.  Cottles agrees, however, improper repairs can cause tread/belt separations and detachments.  Exhibit 3, p. 130.

2.     **Cottles is Not an Expert in Tire Chemistry**

Cottles agrees that tire rubber compounds are developed by chemists and tire compounders, but admits he is not a chemist, chemical engineer or a tire compounder.  Exhibit 2, p. 21-23.  He admits he is not an expert in polymer or rubber chemistry.  *Id*. at

---

[6] *See* Deposition of Troy Cottles in *Cleminson v. Bridgestone Firestone North American Tire, LLC,* relevant portions of which are attached hereto and incorporated herein for all purposes as Exhibit "3," p. 90.

22.  He has never been qualified by any court as an expert in tire chemistry.  *Id.*  He has never designed or formulated the skim stock compound for any tire, including a steel-belted radial tire.  *Id*. at 23.  He agrees the design or formulation of rubber compounds is outside his area of expertise.  *Id*. at 24.  Cottles is not an expert in tire compounding.  Exhibit 3, p. 357.

### 3.    Cottles Litigation Consulting

Goodyear-Dunlop fired Cottles for disloyalty and violation of a noncompete agreement.[7]  Exhibit 2, p. 71.  Cottles admits that since his termination at Goodyear-Dunlop in July of 2005, he has earned his living as an expert witness in litigation matters.  *Id*. at 100.  He began consulting on litigation matters within "a month or so" from being fired.[8]  *Id*. at 100.  He is not presently doing **any** consulting work that is not related to lawsuits or potential lawsuits.  *Id*. at 100.  He admits that 100% of his consulting work is for plaintiffs in lawsuits.  *Id*. at 103.  Cottles has never been hired as an expert witness by any tire manufacturer.  *Id*. at 107.

Within eight months after his termination at Goodyear-Dunlop, Cottles had received over $100,000 in retainers from nine different plaintiffs' attorneys suing tire companies, all before he gave any testimony or was disclosed as an expert witness in any case.[9]  These plaintiffs' attorneys also sent Cottles several depositions of plaintiffs' "tire experts" to review, and further sent him reference materials.  Exhibit 2, p. 92-94.  Cottles admits the majority of the reference materials he has were given to him by these plaintiffs' attorneys.  *Id*. at 94.

---

[7] Cottles worked for Goodyear-Dunlop from 1988 – 2005.

[8]  Cottles admits he had several meetings with plaintiffs' lawyers (including Plaintiffs' counsel in this case) who sue tire companies regarding his willingness to consult with them in litigation cases against tire manufacturers while he was still employed at Goodyear-Dunlop.  *Id*. at 79-81.  He admits he kept these meetings a secret from Goodyear-Dunlop.  *Id*. at 79.

[9] *See* Deposition of Troy Cottles in *Underwood v. Firestone*, relevant portions of which are attached hereto and incorporated herein for all purposes as Exhibit "4," p. 146-155.

**F.     Cottles' Defect Opinions**

**1.     Rubber Reversion Zones**

Cottles opines the subject tire is defective in design and manufacture due to the presence of rubber reversion zones on the belt skims.[10]  He believes the presence of rubber reversion zones indicates the tire was not capable of managing the heat, stress, strain, flexion, and oxygen exposure being generated between the steel belts of the subject tire. *Id.*  He has offered this same design defect opinion regarding rubber reversion zones in other cases against other tire manufacturers.  Exhibit 3, p. 339-340.

Cottles admits his rubber reversion defect theory is not based on any testing he has personally done.  Exhibit 3, p. 340-341.  He has never done any testing on steel-belted radial tires to determine whether service conditions can cause separations resulting in rubber reversion in tires.  *Id.* at 340.  Nor has he analyzed service conditions as causes of rubber reversion zones in tires.  *Id.* at 346-350.  Further, he has not done any scientific studies to support his rubber reversion defect opinion.  *Id.* at 341.

Testing is critical factor courts look at to determine the reliability of an expert opinion.  As noted by the Third Circuit, "Since [the expert] conducted no tests . . . he used little, if any, methodology beyond his own intuition.  There is nothing here to submit to peer review, and it is impossible to ascertain any rate of error for [his] assumptions. . . ." *See Oddi v. Ford Motor Co.*, 234 F.23d 136, 158 (3rd Cir. 2000), *cert. denied* 121 S.Ct. 1357 (2001).

Cottles is not aware of any peer-reviewed, published literature, scientific data, published testing, or scientific studies that support the proposition that rubber reversion in a tire is a defect.  Exhibit 3, p. 341-344.  Nor is he aware of any published texts or treatises which suggest that rubber reversion in a tire is a defect.  *Id.* at 344.  Further, Cottles cannot identify any published testing, peer-reviewed literature, scientific studies or

---

[10] *See* Cottles Report, p. 26-27.

scientific data that stands for the proposition that rubber heat reversion zones are "indicia" of a defect in a tire.  *Id*. at 340-345.

Cottles has not peer-reviewed his opinion that rubber reversion in a tire is a defect. Exhibit 3, p. 343.  He has not published in any journal his opinion that rubber reversion in a tire is a defect.  *Id*. at 344.  He has never offered the opinion at any professional conference or seminar that rubber reversion in a tire is a defect.  *Id*.

Cottles cannot identify any particular scientific community that has accepted the proposition that rubber reversion in a tire is a defect.  *Id*. at 344-345.  He cannot identify any tire expert anywhere in the world that has offered the opinion that if there is a rubber reversion zone in a tire it is indicia of a defect.  *Id*.  **He cannot identify any tire expert anywhere in the world that agrees with his rubber reversion defect theory.**  *Id*. Cottles admits the Tire Industry Association in its Passenger and Light Truck Tire Condition Manual states **tires can sustain tread/belt separations and detachments as a result of service conditions,** and **evidence of that would include reversion of the rubber stock**.  *Id*. at 347-348.  Cottles admits this statement also contradicts his opinion. *Id*. at 348-349.

Moreover, as referenced above, Cottles agrees that the puncture repair in the tire is in the area where he contends the "major rubber reversion crescent zone" is located. Cottles cannot rule out the puncture and/or puncture repair as the cause of what he contends is "rubber reversion" in the subject tire.

### 2.    Insufficient Antidegradants in Skim Compound

Cottles opines the subject tire is defective in design because its skim compound has inadequate antidegradants (antioxidants).[11]  He claims the evidence for this opinion is the "rubber reversion zones" discussed above.  *Id*.  Yet Cottles cannot give a rate of degradation of the antidegradants in Firestone Steeltex Radial A/T tires or in any steel-

---

[11] *See* Cottles Report, p. 27.

FENNEMORE CRAIG, P.C.

PHOENIX

belted radial tires.  Exhibit 3, p. 368.

Cottles cannot quantify the levels of antidegradants in the subject tire on the day of the accident, at any time prior to the accident, or currently.  Cottles does not contend the antidegradants in the subject tire were completely consumed prior to the accident.  In fact, he does not even know if it is possible for all of the antidegradants in a tire to be consumed; yet he has never analyzed that.  Exhibit 2, p. 250-251.  He admits he does not know the chemical nature of all the antidegradants in a tire and the issue of whether all antidegradants in a tire can be consumed is outside his area of expertise.  *Id.*

Cottles has not prepared or proposed an alternative design for the antidegradant package in the subject tire.  He has never designed or formulated the antidegradant system for a steel-belted radial tire.  Exhibit 3, p. 357-358.  He cannot quantify or place a value on what the acceptable levels of antidegradants would be for the subject tire or any tire in order for them not to be defective.  *Id.* at 359, 361.  Cottles does not contend that all tires must use the same antidegradant system or the same levels of antidegradants; yet he cannot identify the objective target for whether the antidegradant system in a tire is adequate.  *Id.* at 360-361.  He is not aware of any industry standard regarding the type or amount of antidegradants in steel-belted radial tires.  *Id.*  He cannot state what antidegradant should be used in the skim stock on the subject tire.  *Id.* at 360.  Nor can he quantify the levels of antidegradants that should be used in the subject tire.  *Id.*  **He admits that determining the types and/or amounts of antidegradants in a steel-belted radial tire is beyond his expertise.**  *Id.* at 360-361.  Clearly, Cottles, who is not a chemist, chemical engineer or compounder, is not qualified to offer his antidegradants opinion.

Further, Cottles' insufficient antidegradants theory does not pass muster under *Daubert*.  He has not done any testing to support his opinion regarding the antidegradant system in the subject tire.  *Id.* at 358-359.  He has never done any testing or analysis of the

antidegradant system for a Firestone Steeltex Radial A/T tire or for any steel-belted radial tire. *Id.* at 358. He has never done any scientific studies of the antidegradant system in any steel-belted radial tire. Exhibit 2, p. 252. Nor has he done any chemical analysis of the subject tire.

Moreover, Cottles has no scientific studies to support his theory. He is not aware of any published literature about appropriate types or levels of antidegradants used in steel-belted radial tires. Exhibit 3, p. 361. Identifying what specific antidegradants would be acceptable in steel-belted radial tires is outside of his field of expertise. *Id.* In addition, as referenced above, Cottles' rubber reversion theory, which he alleges is evidence for his insufficient antidegradants theory, does not pass muster under *Daubert*. *See* p. 11-12 above.

### 3.    Liner Pattern Marks

Cottles opines the subject tire is defective in manufacture due to the existence of liner pattern marks.[12] He believes liner pattern marks are evidence of improper adhesion. *Id.* Cottles' liner pattern theory does not pass muster under *Daubert* for multiple reasons.

Cottles has not performed and cannot identify any testing which has established liner marks as an indicator of poor adhesion or bonding. Exhibit 4, p. 52-53. He performed tread stripping tests at Goodyear-Dunlop to determine the appearance and evidence of lack of bonding between the belts or the belt to the tread. *Id.* at 50, 52. However, these tests were not specifically designed to determine the effect of liner pattern marks. *Id.* Moreover, the results of these tests were not published in a written form or subjected to peer review. *Id.* at 50. Given the lack of testing, "[t]here is nothing here to submit to peer review, and it is impossible to ascertain any rate of error for [his] assumptions. . . ." *See Oddi v. Ford Motor Co.*, 234 F.23d 136, 158 (3rd Cir. 2000), *cert. denied* 121 S.Ct. 1357 (2001).

---

[12] *See* Cottles Report, p. 26.

Fennemore Craig, P.C.

Phoenix

Cottles has not peer reviewed or published his liner pattern theory. Exhibit 1, p. 383. Nor has he ever presented his liner pattern theory at any professional conference. *Id.* He is aware of peer-reviewed, published literature concluding that liner pattern marks are not a defect in tires. *Id.*

Cottles is not aware of an organization that has indicated its general acceptance of the proposition that liner pattern marks are indicative of a product defect and cannot quantify the rate of error of his liner pattern theory/technique; nor is he aware of anyone who has sought to make such a determination. Exhibit 4, p. 56.

## G.   Cottles' Opinions do not Comply with any of the Indicia of Reliability Described in *Daubert*

Cottles has not met the reliability requirements of *Daubert* with respect to his tire defect opinions referenced above: (1) Cottles has not tested his theories; (2) Cottles has not peer-reviewed or published his theories or their underlying bases; (3) Cottles has no scientific studies to support his theories; (4) Cottles cannot establish the rate of error for his opinions or purported methodology, if any; and (5) Cottles' opinions and methodology are not accepted in the relevant scientific community.

*See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S. Ct. 2786, 2795 (1993). If an expert's opinions merely set forth conclusions without any indication of how those conclusions were reached, the expert's opinions will be of no assistance to the trier of fact. Indeed, experts who are willing to form opinions without validating tests lack objectivity, the hallmark of the scientific method. *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502-503 (9th Cir. 1994); *Diviero v. Uniroyal Goodrich Tire Company*, 919 F.Supp. 1353, 1360 (D. Ariz. 1996). *See e.g., Richardson v. Richardson-Merrell, Inc.*, 857 F.2d 823, 829 (D.C. Cir. 1988); *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989).

As Cottles has not satisfied the reliability requirements established by the Supreme

FENNEMORE CRAIG, P.C.

PHOENIX

1   Court in *Daubert* and *Kumho Tire*, his opinions should be excluded.

2       **WHEREFORE,** Defendant Bridgestone Firestone North American Tire, LLC

3   respectfully requests its Motion to Exclude Certain Expert Testimony of Troy Cottles and

4   Brief in Support Thereof be granted; that the Court enter an Order excluding Troy Cottles'

5   above-discussed opinions; and for such other relief, both at law and in equity, to which

6   this Defendant may show itself to be justly entitled.

7
        DATED this 21st day of November, 2008.
8

9                                   HARTLINE, DACUS, BARGER, DREYER &
                                    KERN, L.L.P.
10

11                                  By: ___ s/ *Scott G. Edwards* _____
                                    Scott G. Edwards
12

13                                  And

14                                  William L. Thorpe (No. 005641)
                                    Scott Day Freeman (No. 019784)
15                                  FENNEMORE CRAIG, P.C.
                                    3003 North Central Avenue
16                                  Suite 2600
                                    Phoenix, Arizona  85012-2913
17                                  Telephone:  (602) 916-5000
                                    E-mail:  wthorpe@fclaw.com
18
                                    E-mail:  sfreeman@fclaw.com
19

20                                  And

21
                                    Matthew D. Kleifield (No. 011564)
22                                  Robert C. Ashley (No. 022335)
                                    KUNZ PLITT HYLAND
23                                  DEMLONG & KLEIFIELD
                                    3838 North Central Avenue
24                                  Suite 1500
                                    Phoenix, Arizona  85012-1902
25                                  Telephone:  (602) 331-4600
                                    E-mail:  mdk@kunzlegal.com
26

FENNEMORE CRAIG, P.C.

PHOENIX

1             E-mail:  rca@kunzlegal.com

2

3             Attorneys for Defendant
              Bridgestone Firestone North
              American Tire, LLC

4

5                       **CERTIFICATE OF SERVICE**

6        I hereby certify that on November 21, 2008, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

7

8             Linda B. Williamson
              Lucia Stark Williamson LLP

9             2700 North Central Avenue
              Suite 1400

10            Phoenix, Arizona 85004-1133
              lbw@lswaz.com

11
              Roger S. Braugh, Jr.
12            Sico, White & Braugh L.L.P.
              802 North Carancahua

13            Suite 900
              Corpus Christi, Texas 78470

14            rbraugh@swbtrial.com

15            KUNZ PLITT HYLAND & KLEIFIELD
              Matthew D. Kleifield

16            3838 North Central Avenue
              Suite 15

17            Phoenix, Arizona 85012
              mdk@kunzlegal.com

18
              Scott G. Edwards
19            Hartline, Dacus, Barger, Dreyer & Kern, L.L.P.
              6688 North Central Expressway, Suite 1000

20            Dallas, Texas  75206
              sedwards@hdbdk.com

21
              Marc R. Brosseau
22            Kerr Brosseau Bartlett O'Brien, LLC
              1500 Broadway, Suite 1600

23            Denver, Colorado  80202
              mbrosseau@kbbolaw.com

24

25

26                      *s/ Scott G. Edwards*

FENNEMORE CRAIG, P.C.

PHOENIX